CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
HB Productions, Inc.~~,~~

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HB Productions, Inc., | **Case No.: 1:19-cv-389-ACK-KJM** |
| | (Copyright) |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT;** |
| | **EXHIBITS 1-2; DECLARATION** |
| ~~JOHN DOE dba YTS~~ Techmodo | **OF STEPHANIE KESSNER** |
| Limited, Senthil Vijay Segaran, Noa | |
| Lum, Jacob Vela, Michael Lyons, | **(1) CONTRIBUTORY** |
| Bryan Namba, Michael Limahai, | **COPYRIGHT** |
| Paul Wong, Chelsie Fletcher, Jessica | **INFRINGEMENT** |
| Beltran, Jericson Pastor, Matthew | **(2) INTENTIONAL** |
| Cox, Angeline Craythorn, Jeremy | **INDUCEMENT** |
| Levien, Kenneth Evans,~~and~~ | **(3) DIRECT COPYRIGHT** |
| ~~DOES 1-19~~Terry Thomas | **INFRINGEMENT** |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff HB Productions, Inc. ("Plaintiff") files this FIRST AMENDED

Complaint against Defendants ~~JOHN DOE dba YTS~~Techmodo Limited, Senthil

Vijay Segaran, Noa Lum, Jacob Vela, Michael Lyons, Bryan Namba, Michael

20-018A

Limahai, Paul Wong, Chelsie Fletcher, Jessica Beltran, Jericson Pastor, Matthew Cox, Angeline Craythorn, Jermey Levien, Kenneth Evans  and ~~DOES 1-19~~Terry Thomas (sometimes referred to collectively as "Defendants") and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action to stop the massive piracy of its motion picture *Hellboy* brought on by websites under the collective names YTS and their users.

2.    To halt Defendants' illegal activities, Plaintiff brings this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act") and alleges that Defendants are liable for inducement, and direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.    JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.    Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

5.    Previously identified as JOHN DOE, Defendants Techmodo Limited

2

20-018A

and Senthil Vijay Segaran ("Defendants YTS")JOHN DOE causes harm to Plaintiff's business within this District by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, the interactive websites branded under the name "YTS", particularly yts.lt.

6.     Defendants YTS JOHN DOE haves designed its their interactive websites to individually target Hawaii users based upon their personal information such as web browsing history.

7.     Upon information and belief, Defendants YTS JOHN DOE collects log files including the Internet Protocol ("IP") address, Internet Service Provider ("ISP") and browser type of each user who visits its their interactive websites.

8.     Upon information and belief, Defendants YTS JOHN DOE uses cookies and web beacons to store information such as personal preferences of users who visit its their websites.



20-018A

9.     Upon information and belief, Defendants ~~YTS~~ ~~JOHN DOE~~ obtains financial benefit from ~~its~~ their users in Hawaii via third party advertisements such as Google through the Google AdSense program.

10.    Upon information and belief, Defendants ~~JOHN DOE~~YTS uses the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user.  Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited.



11.    Particularly, Defendants YTS ~~JOHN DOE~~ encourages ~~its~~ their users to register an account with YTS to post comments, make requests for more pirated content and block the advertisements.

20-018A



12.     In the alternative, the Court has jurisdiction of Defendants ~~JOHN DOE~~YTS pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise under federal law; (2) the Defendants ~~JOHN DOE~~YTS purposely directed ~~its~~ their electronic activity into the United States and target~~s~~ and attract a substantial number of users in the United States and, more particularly, this District; (3) Defendants ~~JOHN DOE~~YTS do~~es~~ so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendants YTS ~~JOHN DOE is~~ are not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

13.     Defendants YTS ~~JOHN DOE~~ uses or ~~has~~ have used many United States based sources for operating its interactive websites such as the Internet hosting and nameserver company Cloudflare, Inc. (California), the Internet server companies

20-018A

Digital Ocean, Inc. (New York), Level 3 Communications, Inc. (Colorado), Digital Management Partners, LLC dba GigeNET (Illinois), QuadraNet, Inc. (California), and Hurricane Electric Internet Services (California).

14.     Defendants YTS ~~JOHN DOE~~ further use~~s~~ the Virtual Private Network ("VPN") provider London Trust Media (Colorado) and even ~~the~~ The Onion Router ("TOR") exit relays of the US Naval Research Labs in Washington, DC to conceal ~~its~~ login records to ~~its~~ their Cloudflare account when operating the interactive websites.

15.     ~~Upon information and belief, Defendant JOHN DOE uses the email service "Hotmail" owned by Microsoft, Inc. (Washington) to operate its interactive websites.  Particularly,~~ Defendants YTS ~~JOHN DOE~~ used the so-called tunneling service of Hurricane Electric Internet service to tunnel its true IPv4 address to an IPv6 address, thereby adding a further layer of subterfuge to conceal ~~its~~ their true identity when logging ~~it on~~ to ~~its~~ their Cloudflare account.

16.     Defendants ~~JOHN DOE~~ YTS promote~~s~~ overwhelmingly if not exclusively motion pictures produced by United States companies on ~~its~~ their interactive websites.

17.     Defendants YTS ~~JOHN DOE~~ promote~~s~~ Plaintiff's motion picture prominently on ~~its~~ their website to attract new users.

20-018A



18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) any of the Defendants not a resident of the United States may be sued in this District.

### III.   PARTIES

### A.   The Plaintiff

19.     The Plaintiff is a corporation organized and existing under the laws of the State of Nevada.   The Plaintiff has its principal offices in Los Angeles, California.

20.     Plaintiff is the owner of the copyright for the motion picture in the Work "*Hellboy*", (hereafter: the "Work") a major motion picture released in 2018.

21.     The Work is an action movie starring David Harbour, Milla Jovovich,

IanMcShane.  The Work tells the story of a legendary half-demon superhero called to the English countryside to battle a trio of rampaging giants where he suddenly becomes caught in a clash between the supernatural and the human.

22.    The Plaintiff is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures, including, among others, *Rambo, The Expendables, Olympus Has Fallen* and *London Has Fallen*. *See* www.millenniumfilms.com.

## B.   The Defendants

23.    Defendants ~~JOHN DOE~~YTS operates an interactive website http://yts.lt (hereafter: "YTS website") which includes a library of torrent files for copyright protected motion pictures, including Plaintiff's.  The torrent files can be used by a BitTorrent client application to download motion pictures for free.  Upon information and belief, Defendant YTS ~~JOHN DOE~~ previously operated the websites yts.ag and yts.am which all now redirect to the YTS website.

24.    Upon information and belief, the name YTS mentioned in Defendants ~~JOHN DOE's~~ YTS's website is an abbreviation of YIFY Torrent Solutions.  The name YIFY is derived from the name Yiftach Swery, the founder of YIFY Torrent Solutions.

20-018A

25.     Defendants YTS JOHN DOE states on the YTS website, "Here you will be able to browse and download YIFY movies in excellent 720p, 1080p and 3D quality…"



26.     The YTS website of Defendants JOHN DOEYTS is considered one of the most popular torrent sites in world.  *See* https://torrentfreak.com/top-10-most-popular-torrent-sites-of-2019/ [last accessed on July 19, 2019].

27.     Defendants YTS, together with third parties that are registered users of the websites of Defendants YTS, Defendant JOHN DOE creates created the torrent files that were made available on the YTS websites.

20-018A

28.     Upon information and belief, the registered users of Defendants ~~JOHN DOE~~YTS uses a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

29.     Defendants YTS ~~JOHN DOE~~ includes the words such as [YTS.AM] or [YTS.LT] or at least the wording YTS in the titles of each of the torrent files ~~it creates~~made available on their website in order to enhance ~~its~~ their reputation for the quality of its torrent files and attract users to ~~its~~ their interactive YTS website.

30.     ~~The true names and capacities, whether individual, corporate, associate or otherwise, of~~ Defendant ~~JOHN DOE is unknown to Plaintiff who therefore sues said Defendant by a fictitious name~~Techmodo Limited is a fictional entity organized under the laws of England and Wales.   Defendant ~~JOHN DOE is known to the Plaintiff only by the website where it induces and contributes to infringements of Plaintiff's Work~~Senthil Vijay Segaran is an individual, the sole shareholder of Techmodo Limited and a citizen of India and previously resided in England.

31.     As of July 19, 2019, the whois search records for the registrant of the YTS website (yts.lt) show registrant name of "TechModo Limited" at 85 Great Portland Street, First Floor, London W1W 7LT, in England.   *See* https://www.domreg.lt/en/services/whois/?search=yts.lt [Last Accessed on July 19, 2019.

20-018A

32.    ~~The Company~~Defendant Techmodo Limited was declared dissolved by the Registrar of Companies for England and Wales on April 30, 2019. It was

20-018A

revived or newly incorporated on or around August of 2019 by Defendant Senthil Vijay Segaran.

33.    Cloudflare, Inc. provides hosting and nameserver service for the interactive websites of Defendants YTS JOHN DOE.

34.    Defendant JOHN DOE logged into its Cloudflare accountA registered user of the website of Defendants YTS logged into the website from IP address 2001:470:b07e:0:d83a:a3ff:fe5e:ca    ("IPv6    address")    on    2018-09-19 12:27:05.71563 UTC.   The IPv6 address belongs to the California company Hurricane Electric Internet Services ("Hurricane").

35.    Hurricane has indicated that an individual who identified himself by a verified Hotmail email address from a location in Ontario, Canada subscribed for the so-called tunneling service with Hurricane to tunnel its true IPv4 address to the IPv6 address of Hurricane.

36.    Hurricane indicates that JOHN DOE'sthe true IPv4 address is 24.36.252.95.

37.    Publicly available information indicates that the IPv4 address 24.36.252.95 belongs to the Canadian Internet Service Provider Cogeco Cable Canada Inc. in Ontario.

38.    Upon information and belief, the subscriber at IPv4 address 24.36.252.95 in Ontario, Canada is at least one of the operators of the YTS website.

20-018A

39. ~~Plaintiffs intends to subpoena~~The operators of the website used an email address associated with the US Company Microsoft ~~and request that the Court issue a letter of request to Canada in order to learn the identity of Defendant JOHN DOE~~to register for the service via the IPv4 tunneling service.

40. ~~Upon information and belief, the~~ Previously identified as DOES 1-6, 8-11, 14, and 16-17, Defendants Noa Lum, Jacob Vela, Michael Lyons, Bryan Namba, Michael Limahai, Paul Wong, Chelsie Fletcher, Jessica Beltran, Jericson Pastor, Matthew Cox, Angeline Craythorn, Kenneth Evans, and Terry Thomas ("Defendants YTS users") ~~DOES 1-19~~ are users of the interactive websites of Defendants ~~JOHN DOE~~YTS.

41. The Defendants ~~DOES 1-19~~ YTS users are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: E1F8020C12028A1C9AC791E790FDC53F3F65A3E4 (the "Unique Hash Number"). The file name is Hellboy (2019) [WEBRip] [1080p] [YTS.LT].

42. Upon information and believe, Each of the Defendants ~~DOES 1-19~~ YTS users resides in Hawaii and received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice")

20-018A

requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

43.   Charter Communications LLC dba Spectrum ("Spectrum") provides the Internet service for Defendants YTS users DOES 1-19.  Plaintiff intends to subpoena Spectrum in order to learn provided the subscriber identities of the Internet Protocol addresses associated with the Defendants DOES 1-19 YTS users.  Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true names and permit the Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants.  Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined.  Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

## IV.   JOINDER

44.   Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or

20-018A

transactions, namely (i) the distribution of the torrent file associated with Plaintiff's Work via the YTS website of Defendants ~~JOHN DOE~~YTS to Defendants ~~DOES 1-19~~YTS users; (ii) the inducement by Defendants ~~JOHN DOE~~YTS of the direct infringements of Defendants ~~DOES 1-19~~YTS users; and (iii) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and (b) there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

45.   The Plaintiff is the owner of the copyright in the Work.  The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "2".

46.   The Work is a motion picture currently offered for sale in commerce.

47.   Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

48.   Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyright

20-018A

49.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

50.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants ~~DOES 1-19~~*YTS users* installed a BitTorrent Client onto his or her Computer

51.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

52.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

53.     Defendants ~~DOES 1-19~~YTS users installed a BitTorrent Client onto

20-018A

their respective computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

54.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

55.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

56.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

57.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

58.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify

20-018A

the integrity of the data they receive.

59.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

60.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

61.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

*3. Torrent Sites*

62.    "Torrent sites", such as the website YTS of the Defendants YTS, are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.   There are numerous torrent websites.

63.    Upon information and belief, Defendants went to a torrent site to upload and download Plaintiff's copyrighted Work.

64.    Upon information and belief, each of Defendants DOES 1-19YTS users went to the torrent site YTS of Defendants JOHN DOEYTS to download Plaintiff's copyrighted Work.

18

20-018A

### *4. Uploading and Downloading a Work Through a BitTorrent Swarm*

65.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

66.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

67.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

68.    In this way, all of the peers and seeders are working together in what is called a "swarm."

69.    Here, Defendants participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

70.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The

20-018A

recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

71.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**5. The Plaintiff's Computer Investigator Identified the Defendants *YTS users*' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work**

72.     The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

73.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

74.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

75.     The IP addresses, Unique Hash Number, and hit dates contained on

20-018A

Exhibit "1" accurately reflect what is contained in the evidence logs, and show that Defendants ~~DOES 1-19~~YTS users have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

76.     The Defendants ~~DOES 1-19~~YTS users'~~s~~ computers used the identified IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

77.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

78.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

**C. _A Registered User of the website of_ Defendant~~s~~ ~~JOHN DOE~~YTS _is the initial Seeder of the Work_**

79.     A registered user of the website of Defendant~~s~~ ~~JOHN DOE~~YTS was the initial seeder who copied the Work and together with the Defendants YTS created the torrent file "Hellboy (2019) [WEBRip] [1080p] [YTS.LT]".   Exhibit "1".

80.     Accordingly, Defendant~~s~~ YTS ~~JOHN DOE~~ ~~is~~are the initial contributor

and create of the Swarm identified by the Unique Hash Number.

81.     Defendants YTS ~~JOHN DOE~~ does not have a license from Plaintiff to copy Plaintiff's Work.

### D. Defendants *YTS* ~~*JOHN DOE*~~ ~~*distributes*~~ *distributed* the torrent file of the Work

82.     Defendants ~~JOHN DOE has~~YTS made the torrent file "Hellboy (2019) [WEBRip] [1080p] [YTS.LT]" available to users in Hawaii such as Defendants ~~DOES 1-19~~YTS users, the United States and the entire World to download from its interactive YTS website.

83.     Defendants YTS ~~JOHN DOE~~ ~~does~~did not have a license from Plaintiff to distribute copies of Plaintiff's Work.

### E. Defendants ~~*JOHN DOE*~~*YTS* induces infringements of the Work

84.     Users of the Defendants ~~JOHN DOE~~YTS's interactive website use the website for its intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiff's Copyrighted Work.

85.     Defendants YTS ~~JOHN DOE~~ promotes ~~its~~their website for overwhelmingly, if not exclusively, infringing purposes, and that is how the users use the websites.

86.     The commercial value of Defendants ~~JOHN DOE~~YTS's website

20-018A

depends on high-volume use of unauthorized content through the website. Defendant~~s~~ ~~JOHN DOE~~YTS promise~~s~~ ~~its~~ their users reliable and convenient access to all the content they can watch and users visit the websites based on Defendant~~s~~ ~~JOHN DOE~~YTS's apparent success in delivering infringing content to its customers.

## VI. FIRST CLAIM FOR RELIEF
### (Intentional Inducement – Against Defendant~~s~~ ~~JOHN DOE~~YTS)

87.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

88.    Plaintiff is the copyright owner of the Work which contains an original work of authorship.

89.    Defendant~~s~~ YTS ~~JOHN DOE~~ ~~has~~ had actual knowledge of third parties' infringement of Plaintiff's exclusive rights under the Copyright Act.

90.     Defendant~~s~~ YTS ~~JOHN DOE~~ intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly distribute copies of Copyrighted Works.

91.    As intended and encouraged by Defendant~~s~~ ~~JOHN DOE~~YTS, the website provides torrent files that connect users to Torrent sources and/or sites that deliver copies of Plaintiff's Copyrighted Works.  The operators of these Torrent sources directly infringe Plaintiff's exclusive rights by providing unauthorized

20-018A

copies of the works to the public, including to users of Defendants ~~JOHN DOE~~YTS's website.

92.     Once the user of Defendants ~~JOHN DOE~~YTS's website has obtained a complete copy of the Plaintiff's Copyrighted Works, that particular user also becomes another Torrent source that delivers copies of Plaintiff's Copyrighted Works.

93.     Defendants ~~JOHN DOE~~YTS induces the aforementioned acts of infringement by supplying the torrent file that facilitates, enables, and creates direct links between its users and the infringing Torrent source, and by actively inducing, encouraging and promoting the use of the website for blatant copyright infringement.

94.     Defendants ~~JOHN DOE~~YTS's intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

95.     Defendants ~~JOHN DOE~~YTS's inducement of the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

96.     Defendants ~~JOHN DOE~~YTS's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

**VII. SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement based upon Material**
**Contribution – Against Defendants ~~JOHN DOE~~YTS)**

24

20-018A

97.    Plaintiff re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

98.    Defendants ~~JOHN DOE has~~YTS had actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act.  Defendants ~~JOHN DOE~~YTS knowingly and materially contributes to such infringing activity.

99.    Defendants ~~JOHN DOE~~YTS knowingly and materially contributes to the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to distribute the Work. Defendants ~~JOHN DOE~~YTS designs and promotes the use of the YTS website to provide torrent files that connect customers to unauthorized online torrent sources to download copies of Plaintiff's Copyrighted Work.  The operators of these torrent sources directly infringe Plaintiff's distribution rights by providing copies of the Work to the public, including to YTS website users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of ~~the~~ the content, and they actively and directly cause the content to be distributed when users run the torrent file obtained from the YTS website.

100.    Defendants ~~JOHN DOE~~YTS knowingly and materially contributes to the aforementioned acts of infringement by supplying the website that facilitates, encourages, enables, and creates direct links between website users and infringing operators of the Torrent services, and by actively encouraging, promoting, and

25

20-018A

contributing to the use of the website for blatant copyright infringement.

101.   Defendant~~s JOHN DOE~~YTS's knowing and material contribution to the infringement of Plaintiff's rights in the Copyrighted Work constitutes a separate and distinct act of infringement.

102.   Defendant ~~JOHN DOEs~~ YTS's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

103.   As a direct and proximate result of the infringement to which Defendant~~s JOHN DOE~~YTS knowingly and materially contribute~~s~~, Plaintiff is entitled to damages and Defendant~~s JOHN DOE~~YTS's profits in amounts to be proven at trial.

104.   Defendant~~s JOHN DOE~~YTS obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of their infringing actions in the United States.

105.   Defendant~~s JOHN DOE~~YTS's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

## VIII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement against all Defendants based upon participation in the BitTorrent Swarm)

106.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

26

20-018A

107.   By participating in the BitTorrent swarm with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

108.   Plaintiffs did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

109.   Defendants knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

110.   The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

111.   By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.   The Defendants' misconduct therefore offends public policy.

112.   The Plaintiff has suffered damages that were proximately caused by

20-018A

the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## IX. FOURTH CLAIM FOR RELIEF
### (Direct Copyright Infringement against all Defendants)

113.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

114.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

115.   Defendants ~~JOHN DOE~~YTS copied the constituent elements of the Work when creating the torrent file.

116.   Defendants ~~DOES 1-19~~YTS users copied the constituent elements of the Work.

117.   Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, redistribute, perform, or display their Works.

118.   As a result of the foregoing, Defendants violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images

20-018A

of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

119.   Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

120.   The Plaintiffs have suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining each Defendant from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) Entry of an Order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that, Cloudflare and any other service provider cease providing service for the website: (i) yts.lt; and (iii) any mirror websites in concert with yts.lt such as, but not limited to yts.am and yts.ag, immediately cease said service;

(C) that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their administrators that

29

20-018A

are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants ~~JOHN DOE~~ engages in the aforementioned infringements;

(D) award the Plaintiff's actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages ~~per Work~~ of $150,000 jointly against Defendants Techmodo Limited and Senthil Segaran, and statutory damages of $750 against each of Defendants Noa Lum, Jacob Vela, Michael Lyons, Bryan Namba, Michael Limahai, Paul Wong, Chelsie Fletcher, Jessica Beltran, Jericson Pastor, Matthew Cox, Angeline Craythorn, Jeremy Levien, Kenneth Evans, and Terry Thomas pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, ~~July 19~~November 21, 2019.

20-018A

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
HB Productions, Inc.

20-018A